O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ML PRODUCTS INC., | Case No.:  2:23-cv-08626-MEMF-DTB |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF No. 43]** |
| v. | |
| BILLIONTREE TECHNOLOGY USA, INC.; MOUNTAIN PEAK, INC.; and DOES 1 through 25, inclusive, | |
| Defendants. | |

Before the Court is the Motion for Preliminary Injunction filed by Plaintiff ML Products Inc. ECF No. 43. For the reasons stated herein, the Court hereby DENIES the Motion for Preliminary Injunction.

/ / /

1

## I.    Background

### A.  Factual Background[1]

Plaintiff ML Products Inc. ("ML Products") is a Los Angeles-based online distributor and retailer. Compl. ¶ 9. ML Products has been selling replacement ink and toner cartridges on Amazon.com since 2018. Schwanauer Decl. ¶ 4.

Defendant BillionTree Technology USA, Inc. ("BillionTree") was incorporated in 2013 (ECF No. 43-8) and dissolved on March 30, 2020 (ECF No. 43-12). Defendant Mountain Peak Inc. ("Mountain Peak," with BillionTree, "Defendants") was incorporated on February 8, 2017. ECF No. 43-10.

ML Products primarily sells its ink and toner cartridges on Amazon.com, with approximately 80% of its sales occurring on Amazon.com. Schwanauer Decl. ¶ 5. ML Products alleges, and Defendants contest, that ML Products competes for sales on Amazon.com with Defendants and their various affiliated entities. *Id.*; Opp'n at 4. ML Products also alleges, and Defendants contest, that Defendants employ a series of tactics to fraudulently acquire sales on Amazon and thereby "boost" their products to artificially elevated positions within a consumer's search results:

- Defendants contact purchasers who leave negative reviews and offer compensation for the reviewer to edit or delete a negative review (Schwanauer Decl. ¶ 12); and

- Defendants engage in variation manipulation to "link" unrelated products so that the products can share in reviews and ratings (Schwanauer Decl. ¶ 13).

ML Products alleges that Defendants carry out their fraudulent conduct by creating multiple seller accounts that appear as competing sellers, but in reality, are owned, operated, or controlled by Defendants. Compl. ¶ 7. Specifically, ML Products alleges that Defendants own or control the following brands: 7Magic, Palmtree, CMYBabee, Greensky, HaloFox, ONLYU, Starover, and Toner Kingdom. *Id.* ¶ 35. ML Products alleges that these brands are Defendants' alter egos, thus

---

[1] The following facts are taken from ML Products's Complaint and the declarations and other evidence submitted by each party. *See* ECF Nos. 1 ("Complaint" or "Compl."), 43-2 ("Hollenbeck Report"), 43-3 ("Schwanauer Decl."), 43-4 ("Perica Decl."). Unless otherwise indicated, the following facts appear to be undisputed. Those disputed facts that are merely allegations are noted as such, e.g., "ML Products alleges . . . ."

imputing the conduct of these sellers to Defendants. *Id.* ¶ 36. ML Products alleges that the various brands are connected to Defendants as follows:

- BillionTree and Mountain Peak share a CEO—Jian Zhou—and a principal address—19945 Harrison Avenue (MPA at 5 );

- Zhou dissolved BillionTree in 2020, which was several years after Mountain Peak was formed, and so, for a time, Zhou served as the CEO, Secretary, CFO, Director, and registered agent for BillionTree and Mountain Peak simultaneously (*id.* at 6, ECF Nos. 43-8–43-12);

- BillionTree originally owned the trademark registration for "Toner Kingdom," an ink and toner brand. Before dissolving BillionTree, Zhou transferred ownership of the trademark "Toner Kingdom" to himself and remains the owner today (ECF No. 43-14);

- Online searches for "19945 Harrison Avenue" associate the address with Toner Kingdom (ECF Nos. 43-13, 43-15);

- On Toner Kingdom's website, Toner Kingdom openly touts its affiliation with Mountain Peak (ECF No. 43-16);

- Shenzhen Yangfan Technology Company Ltd. dba Sailing Technology's ("Sailing Technology") specifies that Mountain Peak is its "US overseas warehouse" and notes that the "American breach" of "Mountainpeak Inc." is located at 19945 Harrison Avenue (ECF Nos. 43-19, 43-20);

- BillionTree was established in 2013, while Mountain Peak was established years later. On Sailing Technology's website, Sailing Technology notes that its "American Overseas Warehouse was established in 2013." This reference can only be to BillionTree, and not Mountain Peak, which had not yet been formed but is elsewhere identified as Sailing Technology's warehouse in the United States (*id.*);

- Sailing Technology regularly exported toner and ink products to BillionTree and then Mountain Peak. Some of these shipments specified An An Beauty Limited ("An An Beauty") as a consignee. An An Beauty is the owner of the CMYBabee trademark,

another brand of ink and toner products sold by BillionTree and Mountain Peak (ECF Nos. 43-22, 43-34);

- Sailing Technology owns the trademarks for "7Magic" (ECF No. 43-27);

- Ding Yan (or Yan Ding) is the president of Sailing Technology and is also identified on the trademark registrations for 7Magic, ONLYU, Mooho, Colorking, and Office Helper (ECF Nos. 43-24, 43-25, 43-27–43-30);

- The various brands listed all sell each other's products. For example, the Amazon seller 7Magic Print sells CMYBabee, OnlyU, HaloFox, and Greensky brand toners (ECF Nos. 43-31); and

- Several of the brands use the same customer service email and telephone number (ECF Nos. 43-33–43-41).[2]

ML Products initially had success selling on Amazon.com, but its product rankings quickly dropped after Defendants began employing their fraudulent tactics outlined above. Schwanauer Decl. ¶¶ 9, 10.

### B. Procedural History

On October 12, 2023, ML Products filed its Complaint in this case. Compl. The instant case is related to an earlier filed case, *ML Products Inc. v. Ninestar Technology Co. Ltd. et al*, Case No. 5:21-cv-01930-MEMF-DTB (C.D. Cal., Nov. 12, 2021) (the "Related Case"), in which Defendants were also named until the Court ordered the action severed. Related Case, ECF No. 147.

On April 12, 2024, ML Products filed the instant Motion for Preliminary Injunction. ECF Nos. 43 ("Notice"), 43-1 ("MPA"). The Motion is fully briefed. *See* ECF Nos. 44 ("Opposition" or "Opp'n"), 46 ("Reply"). On July 11, 2024, the Court held the hearing on the Motion. *See* ECF No. 50.

### II.    Applicable Law

A party seeking preliminary injunctive relief must make a "clear showing" that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of

---

[2] Although Defendants contest the alter ego theory, they do not offer any evidence controverting ML Products's evidence. *See generally*, Opp'n.

preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Id.* at 7, 20, 22. The Ninth Circuit employs a sliding scale approach "under which a preliminary injunction c[an] issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [the moving party's] favor," provided that the moving party also makes a showing of irreparable harm and that an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32, 1135 (9th Cir. 2011) (citation and internal quotation marks omitted (holding that the "serious questions" approach survives *Winter*)).

The Court emphasizes that "the findings of fact and conclusions of law made by a court granting a preliminary injunction *are not binding* at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (holding that findings at preliminary injunction stage were not binding on district court at the summary judgment stage).

### III.    Discussion

The Court begins its analysis with the first *Winter* factor—a likelihood of success on the merits.[3] As the Court explains further below, the Court finds that ML Products has not shown a likelihood of success on the merits as to its claims because ML Products fails to show that Defendants have made a false statement of fact.

### A.  ML Products fails to show a sufficient likelihood of success as to alter ego.

Before the Court dives into the merits of ML Products's substantive claims, it is important for the Court to discuss *how* ML Products ties its claims to Defendants. All the allegations in the Complaint relate to non-party third-party brands. *See, e.g.,* Compl. ¶ 50 (Amazon reviews for products under the Toner Kingdom, 7 Magic, and Starover brands). The Complaint makes clear that these brands are either alter egos of the named Defendants or controlled directly by the Defendants themselves. *See* Compl. ¶¶ 11 ("BillionTree owned, operated, and/or controlled, directly or

---

[3] Given the Court's finding that ML Products has not shown a likelihood of success on the merits as to its claims, the Court need not determine whether the injunction ML Products seeks is mandatory or prohibitory in nature, and as such, whether a higher showing must be made for the injunction to issue.

indirectly, a number of ostensibly separate "brands" of replacement toner and ink which are still offered for sale in the United States on Amazon but now operated by Mountain Peak, Inc."), 12 ("These brands, including a number of shell corporations affiliated therewith, are alter egos of BillionTree and Mountain Peak."). ML Products thus asserts that Defendants are liable for the conduct of these various "brands" or entities through either an alter ego relationship or direct control. Thus, ML Products must show a likelihood of success on either its alter ego or direct control theories in order to show a likelihood of success for claims it brings against Defendants.

> i.  ML Products only shows a unity of interest between Defendants and Zhou.

A plaintiff must plead two elements to establish alter ego liability under California law: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300 (1985) (internal quotation marks omitted). The same elements apply where multiple entities are sought to be held liable instead of any individual. *Id.* California courts have created a list of non-exhaustive factors tending to show a unity of interest and ownership:

> inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002). No single factor is dispositive. *Id.* at 244. "[A]lter ego is an extreme remedy, sparingly used . . . ." *JPV I L.P. v. Koetting*, 88 Cal. App. 5th 172, 189 (2023).

Here, the Court finds that ML Products has not shown a likelihood of success as to its alter ego theory. As an initial matter, ML Products has not shown that several of the brands—7Magic, Toner Kingdom, ONLYU, Mooho, Colorking, and Office Helper—are actual entities that are capable of being in an alter ego relationship with Defendants as opposed to non-entity brands under which the Defendants sell various products. Although ML Products has provided the articles of incorporation for BillionTree and Mountain Peak, it has not offered any such evidence for the remaining entities. *See generally* ECF Nos. 43-5–43-41. Instead, based on the record before the

Court, it appears that 7Magic, Palmtree, CMYBabee, Greensky, HaloFox, ONLYU, Starover, and Toner Kingdom are not separate entities; instead, they are brands that either Mountain Peak, Sailing Technology, Ding Yan, Caixia Zhang, and Jhian Zhou own the trademarks for. *See, e.g.,* ECF Nos. 43-14 (trademark registration for "Toner Kingdom" listing Jian Zhou as the trademark owner), 43-25 (conveyance of ownership of the "COLORKING" mark from Ding Yan to Caixia Zhang), 43-28 (TEAS Plus Application for "Office Helper" listing Mountain Peak as the owner of the mark), 43-29 (trademark registration for "ONLYU" listing Sailing Technology as the owner of the mark). As such, ML Products has not shown that 7Magic, Palmtree, CMYBabee, Greensky, HaloFox, ONLYU, Starover, and Toner Kingdom are entities that are capable of being in an alter ego relationship with Defendants.[4]

However, Sailing Technology, Ding Yan, Caixia Zhang, and Jhian Zhou are capable of being in alter ego relationship with Defendants because they are either separate entities or individuals. As for these entities and individuals, the evidence offered by ML Products shows, at best, that there is some affiliation between the non-party entity and individuals, on the one hand, and Defendants on the other hand. For example, ML Products argues that Sailing Technology openly boasts about its connection to Mountain Peak as Sailing Technology's United States warehouse. MPA at 7. However, ML Products does not explain why that connection results in a unity of interest and ownership between the two entities. *See id.* Mountain Peak could very well operate as Sailing Technology's United States warehouse while still maintaining a separate corporate identity—that is, Mountain Peak could still maintain its own corporate ledger, accounts, and assets. Also, although ML Products points to evidence establishing that Ding Yan is involved with both Sailing Technology and Mountain Peak (MPA at 9, 10), under California law, common employment and common addresses are not enough to establish an alter ego relationship alone. *Santa Clarita Org. for Plan. & Env't v. Castaic Lake Water Agency,* 1 Cal. App. 5th 1084, 1106 (2016). ML Products also points out that, despite the fact that the trademarks for the brands are split in ownership, all the

---

[4] However, as the Court mentioned above, ML Products can still base Defendants' liability on statements made by 7Magic, Palmtree, CMYBabee, Greensky, HaloFox, ONLYU, Starover, and Toner Kingdom under ML Products's theory that these are brands under which Defendants operate.

brands use the same customer service phone number and email. *See* ECF Nos. 43-33–43-41. While this evidence also shows some connection between the Defendants, Ding Yan, and Sailing Technology, the Court finds that, even when considered with the other evidence, this is not enough to establish a unity of ownership such that the corporate form has been disregarded. It is conceivable that affiliated or related entities could use the same call center or customer service email while still maintaining corporate separateness.

The strongest evidence of an alter ego relationship is that Zhou transferred the trademark rights for "Toner Kingdom" to himself after dissolving BillionTree and has held the rights since then. However, this would only establish an alter ego relationship between Zhou and BillionTree, a dissolved corporation.

At the hearing, ML Products argued that Defendants have failed to show any evidence to rebut the evidence that ML Products has presented on the alter ego issue, particularly pointing out that Defendants did not file any affidavit from Zhou disclaiming an association with Defendants or the other brands. Defendants' counsel informed the Court that the parties were negotiating a protective order, and as such, it appears that Defendants may have evidence relevant to this point that they do not want to publicly file until a protective order is in place. Defendants also pointed the Court to the Affidavit of Jian Zhou, filed in the Related Case. Related Case, ECF No. 54-3 ("Zhou Affidavit"). In his Affidavit, Zhou states that, based on his knowledge, "Mountain Peak is not the successor of Billiontree USA," and that "neither Billiontree USA nor Mountain Peak has ever owned or controlled 7Magic, Palmtree, CMYBabee, Greensky, HaloFox, OnlyU, Starover, . . . [or] Shenzhen Yangfan Technology Company . . . ." Zhou Affidavit ¶¶ 6, 7.

In sum, the Court finds that ML Products has only shown the first alter ego prong as to Zhou and BillionTree. Thus, ML Products has not shown a likelihood of success as to its alter ego theory concerning Defendants, on the one hand, and Sailing Technology, Ding Yan, or Caixia Zhang on the other hand because ML Products has not shown a unity of interest.

ii. ML Products has not shown an inequitable result if Zhou's conduct is not imputed to Defendants.

The second prong of the alter ego analysis ask whether the recognition of corporate separateness "would result in probable fraud, promote confusion or serve to accomplish an injustice." *Thomson v. L.C. Roney & Co.*, 112 Cal. App. 2d 420, 430 (1952).

Here, ML Products has failed to show what, if any, inequities would follow if the corporate veil were not pierced. As far as the Court is aware, there are no allegations or evidence that Zhou could not be sued or could not pay any potential judgment if he were sued. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F.Supp.3d 42, 55–56 (N.D. Cal. 2020) ("Finally, and most damning, Plaintiff never alleges, nor is there any evidence, that Defendant AAL cannot answer Plaintiff's claim and/or pay any potential judgment."); *Relentless Air Racing, LLC v. Airborne Turbine Ltd. P'ship*, 222 Cal. App. 4th 811, 816 (2013) (finding inequitable result where entity had no substantial assets from which judgment could be satisfied). Thus, ML Products has not shown that failing to impute Defendants' acts to Zhou and vice versa would result in any inequity. This is not—as far the record at this stage shows—the stereotypical alter ego case where an individual hides behind an under-capitalized corporation while pulling all the strings. Moreover, ML Products has not shown that, during the relevant time period, Zhou used BillionTree to conduct or perpetuate any fraud impacting the rights of third parties.

For the foregoing reasons, the Court finds that ML Products has not shown a likelihood of success as to its alter ego theory.

### iii.    ML Products has shown that Office Helper is Defendants' brand.

As the Court mentioned above, ML Products's alternate theory tying Defendants to 7Magic, Palmtree, CMYBabee, Greensky, Office Helper, HaloFox, ONLYU, Starover, and Toner Kingdom is that these are brands under which Defendants operate, and as such, no alter ego relationship is necessary to attribute statements made ostensibly by the brands to Defendants.

As explained above, ML Products has shown that Mountain Peak owns the "Office Helper" brand. *See* ECF No. 43-28 ("Office Helper" trademark owned by Mountain Peak). As to the other brands—7Magic, Palmtree, CMYBabee, Greensky, HaloFox, ONLYU, Starover, and Toner Kingdom—they appear to be owned by non-parties. *See* ECF Nos. 43-14 ("Toner Kingdom" trademark owned by Zhou), 43-25 (assignment of rights in "Colorking" trademark from Ding Yan to

Caixia Zhang), 43-27 ("7Magic" trademark owned by Sailing Technology), 43-29 ("OnlyU" trademark owned by Sailing Technology), 43-30 ("Mooho" trademark owned by Ding Yan). Because, as stated above, ML Products has not succeeded on its alter ego theory, ML Products cannot provide its claims by attributing statements from these non-parties to Defendants. As such, at this stage, the Court will evaluate the likelihood of success on the merits as to ML Products's substantive claims insofar as they are based on Office Helper.

At the hearing, counsel for ML Products argued that the Court could impute the statements by 7Magic, Palmtree, CMYBabee, Greensky, HaloFox, ONLYU, Starover, and Toner Kingdom to Defendants through a civil conspiracy theory. However, when asked by the Court whether counsel could provide legal authority that the Court could do so even though ML Products had not pled civil conspiracy in its Complaint, counsel could not point the Court to any such authority. Given this lack of authority, and that ML Products seeks to amend its Complaint to add a count for civil conspiracy, *see* ECF Nos. 48, 52, the Court declines to attribute the statements made by 7Magic, Palmtree, CMYBabee, Greensky, HaloFox, ONLYU, Starover, and Toner Kingdom unto Defendants under a civil conspiracy theory.

### B. ML Products has not established a likelihood of success on the merits as to its Lanham Act claim.[5]

To prevail on its Lanham Act claim, ML Products must prove "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by

---

[5] Because ML Products fails to show a likelihood of success as to the first, required element of its Lanham Act claim, the Court need not consider whether ML Products can show a likelihood of success as to the other elements.

necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id.*

First, ML Products must show a false statement of fact made *by the defendant*—that is, by either BillionTree or Mountain Peak.

ML Products argues that it has shown that Defendants have made a false statement of fact by linking together unrelated product pages such that the different products share a review status and sales history. Mot. at 16. ML Products also argues that Defendants, by paying consumers for positive reviews or to remove negative reviews, have also made an actionable false statement under the Lanham Act. Mot. at 17. For both categories of false statements, ML Products points to examples in the Hollenbeck Report and the Schwanauer Declaration. *See* Mot. at 16, 17 (citing Hollenbeck Report and Schwanauer Declaration). However, the statements that ML Products points to are not attributable to Defendants, as the statements were not made either directly by the Defendants or through the one brand the Court has found ML Products has shown—for purposes of this Motion— Defendants control—Office Helper. Instead, the statements ML Products points were made by other brands (Greensky, CMYBabee, Halofox, Toner Kingdom, 7Magic, and OnlyU) that the Court has found are not attributable to Defendants. *See* Hollenbeck Report at ¶¶ 27–51 (analyzing various products sold by Greensky, CMYBabee, Halofox, Toner Kingdom, 7Magic, and OnlyU and determining that the product pages are either improperly linked to unrelated products or that the seller manipulated ratings by paying for positive reviews or the deleting of negative reviews); *see also* Schwanauer Decl. ¶¶ 17–33 (discussing products sold by CMYBabee, HaloFox, Toner Kingdom, OnlyU, and Greensky and how the products are incompatible with other ink/toner products that they share reviews with due to product linking). As such, ML Products has not shown that Defendants, either themselves or through Office Helper, have made any statements, let alone false statements. *See* MPA (not pointing to any statements made by Defendants or Office Helper directly); Hollenbeck Report (same); Compl. (same).[6]

---

[6] Defendants argue that Hollenbeck's Report should be excluded. Opp'n at 13–14. The Court declines to do so at this stage.

They have merely shown that *other* entities—whose statements are *not* attributable to Defendants for the reasons explained above—have made statements and that some of these statements are false statements of fact. As such, ML Products has not shown the first element of its Lanham Act false advertising claim—a false statement of fact by Defendants. Because this is a required element that ML Products has not shown, ML Products has not carried its burden of showing a likelihood of success as to the merits of its Lanham Act false advertising claim.

Given that the Lanham Act claim is substantially congruent to UCL and FAL claims, *see Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F.Supp.2d 1168, 1182 (N.D. Cal. 2007) *citing Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994), the Court need not analyze ML Products's likelihood of success as to its FAL or UCL claims, as they fail for similar reasons.

At the hearing, ML Products argued that an injunction should issue under the sliding scale approach because ML Products has shown "serious questions going to the merits" and balance of hardships that tips sharply toward the plaintiff, as well as a likelihood of irreparable injury and that an injunction is in the public interest. *See All. for the Wild Rockies*, 632 F.3d at 1135 ("That is, "serious questions going to the merits" and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."). However, although the sliding scale allows courts to "balance the elements of the preliminary injunction test," a plaintiff must still make "a certain threshold showing . . . on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (explaining, in the context of an immigration case regarding stay of removal, how *All. For the Wild Rockies* articulated the showing required under the sliding scale approach post-*Winter*). Here, ML Products has not done that. Although ML Products argued at the hearing that it has shown serious questions as to the alter ego theory, the Court does not find that ML Products has done so. As the Court said, at most, ML Products has shown an association between Defendants and other third parties. This does not raise serious questions going to the merits of the alter ego theory or make the necessary threshold showing on likelihood of success. If ML Products could bridge this gap—that is, show that the false consumer reviews and improper ASIN linking it

points to are attributable to Defendants—then the Court might agree that ML Products has shown serious questions going to the merits.

///

## IV.    Conclusion

For the foregoing reasons, the Court hereby DENIES the Motion WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: July 22, 2024

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

13