UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ML PRODUCTS INC,<br><br>Plaintiff,<br><br>v.<br><br>BILLIONTREE TECHNOLOGY USA, INC., MOUNTAIN PEAK. INC., SHENZHEN YANGFAN TECHNOLOGY COMPANY LTD., JIAN ZHOU, DING YAN, AND DOES 1 THROUGH 25, INCLUSIVE,<br><br>Defendants. | Case No.: 2:23-cv-08626-MEMF-DTB<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [ECF NO. 114]** |

Before the Court is the Motion to Dismiss filed by Defendants Billiontree Technology USA, Inc. ("Billiontree") and Mountain Peak. Inc. ("Mountain Peak"; together with Billiontree, "Moving Defendants"). ECF No. 114. For the reasons stated herein, the Court DENIES the Motion to Dismiss.

/ / /

/ / /

I. **<u>Factual Background</u>**[1]

Plaintiff ML Products Inc. ("ML Products") is a Los Angeles-based online distributor and retailer that sells replacement toner and ink cartridges to consumers on Amazon.com. 1AC ¶ 9. The Moving Defendants also sell third-party ink and toner replacement cartridges on Amazon.com. *Id.* ¶ 11, 12. Billiontree was dissolved on March 3, 2020, and Mountain Peak took over as a successor. *Id.* ¶¶ 11, 12. Mountain Peak is organized under the laws of California and has its principal place of business in California. *Id.* ¶ 12. Mountain Peak now operates Billiontree's business and owns, operates, and/or controls the numerous Billiontree "brands."[2] *Id*. Mountain Peak was incorporated in 2017 by Ding Yan, who is also referred to as Yan Ding. *Id*.

As third-party sellers, ML Products and other similarly situated sellers, including Defendants, compete for profit on Amazon.com. *Id.* ¶ 1. Sales on Amazon.com are heavily dependent on the placement of a seller's product among other related products in Amazon's search results, and Amazon's search rankings can "make or break" a product. *Id.* ¶¶ 1–2, 25. Most Amazon shoppers do not click past the first page of search results, and the most viewed products are the first few items listed. *Id.* ¶ 25. Accordingly, sellers want their products to appear at the top of the results list, and certainly on the first page of the results list. *See id*. ¶ 24.

Defendants employ several deceptive tactics to manipulate Amazon's algorithm to artificially elevate the placement of their products. *Id.* ¶ 30. These tactics include commissioning fake product reviews; compensating customers for product reviews or to change or remove negative product reviews; manipulating sales rank by accepting fake orders that Defendants themselves pay for; use of "ghost" accounts to manufacture the false impression of interest in or sales of products, to inflate product ratings, and/or to manipulate the "helpful" voting for (likely false) positive reviews of Defendants' products; and review "repurposing," including (i) reusing older product listings (and their accompanying review history) with new product offerings in order to falsely capitalize on past

---

[1] The following factual allegations are derived from the allegations in Plaintiff's First Amended Complaint, ECF No. 101 ("1AC"), except where otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true

[2] These brands are 7Magic, Palmtree, CMYBabee, Greensky, HaloFox, ONLYU, Starover, Toner Kingdom, Mooho, Colorking, Tounker, and Hotoink. 1AC ¶ 40.

2

sales and review history for new products and (ii) "variation" manipulation achieved by falsely treating different toner and ink products as variations of a single offering in order to falsely share in the ratings, reviews, and status of each other. *Id.* ¶ 4.

As a result of these tactics, ML Products's products are relegated to a lower placement on search results, ultimately causing ML Products to lose profits, and forcing ML Products "to concentrate on sales of smaller, niche ink and toner products . . . ." *Id.* ¶¶ 1, 118, 120.

## II. Procedural History

ML Products originally filed suit against the Moving Defendants and a large number of other entities in one case, *ML Products Inc. v. Ninestar Technology Co. LTD. et al*, Case No. 5:21-cv-01930-MEMF-DTB. ECF No. 1. On September 27, 2023, the Court issued an order granting in part various motions to dismiss in that action. *Id.*, ECF No. 147 ("*Ninestar* MTD Order"). As part of that order, the Court also ordered that the action be severed into three actions: one against Ninestar Technology Co., Ninestar Corporation, and V4Ink Inc. ("the Ninestar Entities")—the *Ninestar* Action; one against Aster Graphics, Inc.—the *Aster Graphics* Action;[3] and one against the Moving Defendants. *Ninestar* MTD Order.

Pursuant to the severance of the original action, on October 12, 2023, ML Products filed a complaint alleging causes of action against the Moving Defendants for violations of: (1) the Lanham Act; (2) California's Unfair Competition Law; and (3) California's False Advertising Law. ECF No. 1 ("Complaint" or "Compl."). Thereafter, the Court issued an order in the *Ninestar* Action granting in part a motion to dismiss the first amended complaint with respect to the Ninestar entities. *Ninestar* Action, ECF No. 182.

On April 12, 2024, ML Products filed a Motion for Preliminary Injunction in the instant action. ECF No. 43. The Court denied the Motion for Preliminary Injunction. ECF No. 54 ("PI Order").

---

[3] *ML Products Inc. v. Aster Graphics, Inc. et al*, Case No. 5:23-cv-02094-MEMF-DTB.

3

On April 21, 2025, ML Products filed the 1AC.[4] 1AC. The 1AC adds Shenzhen Yangfan Technology Company Ltd. ("Sailing Technology"), Jian Zhou, and Ding Yan as additional defendants. *See generally id.* ML Products also alleges a fourth cause of action—Civil Conspiracy—against all Defendants. *See generally id.*

On May 19, 2025, the Moving Defendants filed the instant Motion to Dismiss. ECF No. 114 ("Motion" or "Mot."). The Motion is fully briefed. ECF Nos. 125 ("Opposition" or "Opp'n"), 127 ("Reply").

On July 3, 2025, the Court held a hearing on the Motion. The Court took the Motion under submission.

### III. Applicable Law

#### A. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[4] On November 15, 2024, ML Products filed a Motion to File First Amended Complaint. ECF No. 62. On April 16, 2025, the Court granted the Motion to File First Amended Complaint. ECF No. 99.

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### B. Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). Motions to strike "are generally regarded with disfavor because of the limited importance of pleading in federal practice," and they "are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019) (internal quotation marks omitted).

## IV. Discussion

The Moving Defendants move this Court to dismiss the instant action for several reasons: (1) ML Products makes the same allegations or theories that the Court already rejected in this action and in the *Ninestar* Action; (2) the 1AC contains redundant, immaterial, impertinent, and scandalous matters that should be stricken; (3) ML Products's claims are not pleaded with particularity; and (4) relatedly, ML Products has failed to sufficiently allege its claims. *See generally* Mot.

### A. Rule 9(b) Applies Here.

In its prior order in the *Ninestar* Action, the Court found that Rule 9(b) applies to ML Products's claims "because ML Products's Lanham Act claim sounds in fraud." *Ninestar* Action, ECF No. 147 at 12. In that order, the Court relied on the same allegations of "manipulation" tactics that ML Products makes here to conclude as such. *Compare id.* at 12–13 *with* 1AC ¶ 4. Because ML Products alleges the same tactics and makes the same Lanham claim against Defendants in this case, the Court finds that Rule 9(b) applies in the instant action as well. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009) (holding that when a claim is "said to be 'grounded in fraud' or 'sound in fraud,'" the pleading "as a whole must satisfy the particularity requirement of Rule 9(b)").

Although a plaintiff generally need only offer a "short and plain statement" showing that she is entitled to relief, Fed. R. Civ. P. 8, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)). In simpler terms, a plaintiff alleging fraud must plead the "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is false or misleading about" it and "why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

### B. ML Products Has Remedied the Defects Identified in the Court's Prior Orders.

Defendants argue that the Court should dismiss the 1AC in its entirety because ML Products advances theories and allegations that this Court previously found unavailing in this action and in the *Ninestar* Action. Mot. at 7 (referencing the PI Order and the orders in the *Ninestar* Action (*Ninestar* Action, ECF Nos. 147, 182)). The Court finds that ML Products has advanced viable theories. As such, the Court DENIES the Motion.

#### 1. ML Products May Rely on Statements Made by Defendants' Brands.

The Moving Defendants argue that because this Court already found that brands are "incapable of being alter egos," the 1AC should be dismissed in its entirety because it is "riddled with references to this theory[,] and those allegations form the basis for each of the stated causes of action." Mot. at 6–7. ML Products responds that because the Court allowed it to pursue claims based on the brands' wrongful acts, dismissal is not warranted. Opp'n at 5. The Court again finds that ML Products may rely on the brands' statements or conduct to pursue its claims.

As an initial matter, although the Moving Defendants argue that ML Products has not alleged with particularity the relationship among Defendants and their brands, *see* Mot. at 11, the Court finds

ML Products's allegations regarding Defendants' relationships with each other and their brands sufficient. ML Products alleges as follows:

- Billiontree: Mountain Peak's predecessor (1AC ¶ 11); registered to 19945 Harrison Ave, City of Industry, California 91789 (*id*. ¶ 37);
- Mountain Peak: Billiontree's successor (*id*. ¶ 12); registered to 19945 Harrison Ave, City of Industry, California 91789 (*id*. ¶ 37);
- Sailing Technology: Labels Mountain Peak as its "US overseas warehouse" (*id*. ¶ 13); Ding Yan is the president (*id*. ¶ 13); owns, operates, and/or controls Mountain Peak (*id*.); owns the trademark to brands 7Magic and ONLYU (*id*. ¶ 42); the company website lists the brand Colorking (*id*.); owns the U.S. trademark for the brands Palmtree and 7Magic and the Chinese trademark for the brands HaloFox, Greensky, CMYBabee, 7Magic, ONLYU, Starover, and Palmtree (*id*. ¶ 45);
- Jian Zhou: Mountain Peak's current Secretary, CEO, CFO, Director, and agent for service of process (*id*. ¶ 14); Billiontree's Secretary, CEO, CFO, Director, and agent for service of process before Billiontree dissolved (*id*.); contact person for the U.S. trademark for the brand Toner Kingdom (*id*. ¶ 47); signed the articles of incorporation for Billiontree (*id*.); contact name for the U.S. trademark for the brand Greensky (*id*. ¶ 48);
- Ding Yan: President of Sailing Technology (*id*. ¶ 15); registered and incorporated Mountain Peak (*id*. ¶¶ 13, 15, 44); registered Billiontree's trademark (*id*. ¶¶ 36, 37); contact name on the trademark registration for brands 7Magic and ONLYU (*id*. ¶ 37); registered the trademark for brands Colorking and Mooho (*id*. ¶ 44); contact person for trademark registration for 7Magic, Office Helper, ONLYU, Mooho, and Colorking (*id*. ¶ 46).

In light of the interconnectedness between Defendants—including the Moving Defendants sharing the same address, Sailing Technology labeling Mountain Peak as its "U.S. overseas warehouse," the same individual defendants incorporating and/or holding offices for all three entity defendants, and the same individual defendants sharing the overlapping role as the contact person for

the various brands—the Court finds that ML Products has alleged with particularity that Defendants (and their brands) are so interrelated that it may pursue its claims against them all.[5]

In the prior PI Order, the Court found, after considering the evidence submitted by ML Products, that it "has not shown that [Billiontree's brands] are entities that are capable of being in an alter ego relationship with Defendants." PI Order at 7. Other than the newly added paragraphs 43 to 46 about the new defendants, references to all Defendants as opposed to only Billiontree, and four additional brands (Mooho, Colorking, Tounker, and Hotoink), the allegations in the initial Complaint and the 1AC regarding Defendants' "alter ego sellers" are identical. *Compare* Compl. ¶¶ 34–46 *with* 1AC ¶¶ 39–55. However, the Court also noted in the PI Order that "ML Products can still base Defendants' liability on statements made by [their brands] under ML Products's theory that these are brands under which Defendants operate." PI Order at 7 n.4. Here, the 1AC alleges that Billiontree, through its brands, utilized some manipulation tactics, such as giving compensation to change or delete negative reviews (1AC ¶¶ 57–62) and paying for false positive reviews (*id*. ¶¶ 63–68). Insofar as ML Products makes such allegations based on the statements and actions associated with Defendants' brands, which the Court found permissible in the PI Order, dismissal is not warranted on this basis.

As such, the Court DENIES the Motion with respect to ML Products's purported "alter ego brands" theory.

### 2. ML Products's "Reuse of Product Listing" Theory Meets the Rule 9(b) Standards.

The Moving Defendants argue that because the Court found in the *Ninestar* Action that ML Products's allegations of a "reuse of product listings" is not legally viable, the 1AC should be dismissed. Mot. at 7. ML Products responds that because it has remedied the defect identified in a prior order, dismissal is not warranted. Opp'n at 5 (referencing paragraph 83 of the 1AC), 19 (same). The Court finds that ML Products has sufficiently alleged its "reuse of product listings" theory.

---

[5] For clarification, and as will be explained next, the Court does not find that the brands are *alter ego entities* of Defendants. Rather, the Court finds only that ML Products may rely on the conduct or statement made by the brands to pursue its claims.

In its prior order in the *Ninestar* Action, the Court found that ML Products did not sufficiently allege its "reuse of product listing" theory because it failed to specify when each product was released. *See Ninestar* Action, ECF No. 182 at 10 ("[M]arkedly missing from the allegations are statements as to *when* each product was released.") (emphasis in original). But the 1AC does not contain such flaws. In particular, ML Products alleges that there is at least one review for Palmtree's replacement ink for OfficeJet Pro 910XL, dated December 16, 2022, that refers to a product by a different brand (Brother), and that this review was written before the OfficeJet Pro ink cartridge's first available date of May 5, 2023. *See* 1AC ¶ 83.[6] Reading the allegations in ML Products's favor, as the Court must at the current motion to dismiss stage, the Court finds that ML Products has sufficiently alleged its "reuse of product listing" theory.

The Court therefore DENIES the Motion as to ML Products's "reuse of product listing" theory.

        3.   *ML Products's "Paid False Positive Reviews" Theory Meets Rule 9(b)'s Standards.*

The Moving Defendants argue that because the Court refused to recognize liability for "paid false positive reviews" in the *Ninestar* Action, the 1AC should be dismissed. Mot. at 7; *see also id.* at 9–11 (arguing that ML Products has not pleaded with particularity under Rule 9(b)). ML Products contends that unlike in the *Ninestar* Action, the customers here "admit to deleting or upgrading negative reviews after being harassed by Defendants." Opp'n at 6 (citing 1AC ¶¶ 57–58), 19 (citing *id.* ¶¶ 57–73). The Court finds that ML Products has sufficiently alleged the "paid false positive reviews" theory.

In a prior order in the *Ninestar* Action, the Court found that ML Products failed to allege why the reviews allegedly written in exchange for compensation were false. *See Ninestar* Action, ECF No. 147 at 15 ("ML Products also fails to allege *why* these reviews are false.") (emphasis in original). The Court finds that ML Products, in the 1AC, has alleged that the reviews were false.

---

[6] Although the screenshot in paragraph 83 does not explicitly mention Palmtree, ML Products, or any other ML Products brands, the Court finds that the screenshot is consistent—or, at least, not inconsistent—with the "reuse of product listing" theory.

9

For instance, ML Products has alleged that HaloFox contacted reviewers to delete their negative reviews in exchange for a $30 Amazon gift card. *See* 1AC ¶ 61. One of the screenshots included in paragraph 61 states that the products "did not work for my printer but they sent a $30 gift card in exchange for removing the negative review of [one] star." *Id*. (a screenshot of a three-star review with the title, "These did not work but they gave me a gift card"). Reading the allegation and the screenshot as a whole and in ML Products's favor, the Court finds that ML Products has sufficiently alleged that there is at least one false review written in exchange for a gift card, i.e., three stars instead of one star for a $30 Amazon gift card.[7] Because ML Products has alleged that at least one customer changed their review to a higher rating because of Defendants' actions through one of their brands, the Court finds that ML Products has sufficiently alleged its "paid false positive review" theory.

As such, the Court DENIES the Motion as to ML Products's "paid false positive review" theory.

In sum, the Court DENIES the Motion as to three above-referenced theories.

### C. ML Products' Allegations Are Not Stricken.

The Moving Defendants argue that numerous paragraphs and footnotes should be stricken from the 1AC because they are redundant, immaterial, impertinent, and scandalous. Mot. at 7–9. ML

---

[7] The Court notes that the allegations and screenshots under the sub-heading "Paid False Positive Reviews," 1AC ¶¶ 63–73 do not support ML Products's theory. ML Products alleges only that multiple reviewers were offered Amazon gift cards for five-star reviews, but there is no allegation that those five-star reviews were *false*. *See* 1AC ¶¶ 67 (containing a screenshot of a five-star review that only states that "this review and video were provided in exchange for a promo"), 68 (another screenshot of a five-star review that states, "this company will offer you a gift card if you write a review on their product," but otherwise not indicating that the review contains false statement). Other paragraphs and screenshots—which contain screenshots of fewer-than-five-star reviews—similarly lack indication that the reviews were false. *See id*. ¶ 64 (alleging that the reviewers were contacted by Defendants for "[five]-star reviews in exchange for Amazon gift cards" and that they were "directed 'not to mention the gift card in [their] review,'" but otherwise failing to allege that the reviews were false), 65 (alleging only that Billiontree "solicits positive reviews by offering Amazon gift cards in exchange for writing positive reviews"), 66 (same).

The Court further notes that the screenshot under paragraph 60 does not advance the theory. Although ML Products alleges that the screenshot shows that the reviewer was contacted by Greensky to delete their one-star review for a refund or a replacement cartridge, the review indicates that the reviewer changed the rating from one star to three stars because he was satisfied with Greensky's response to his complaint. The Court does not find that this review supports finding of a *false* review.

Products responds that because the Moving Defendants' arguments are "misplaced evidentiary objections" to the 1AC's allegations, and because its allegations "directly support its claims," there is no reason to strike those portions from the 1AC. Opp'n at 7 (arguing that the various newspaper articles and other statements provide "further context to its substantive allegations" and "background on the environment in which Defendants' conduct occurs"). The Court finds that striking the allegations is not warranted.

The Court finds that hearsay is not a ground for striking allegations from a complaint. For paragraphs 5, 8, 25, 29, 21, 89–103 and relevant footnotes, the Moving Defendants argue that because they contain hearsay statements, the Court should strike them. *See* Mot. at 7–9. But the Moving Defendants provide no authority—binding or persuasive—holding that the hearsay *evidentiary* objection may be used to strike *allegations* in a complaint. In contrast, ML Products provides caselaw finding that evidentiary objections are not appropriate at the pleadings stage. *See Anderson v. CBE Grp., Inc.*, 2011 WL 13355811, at *3 (N.D. Cal. Apr. 18, 2011) (finding hearsay objection to allegations in a complaint "misplaced"); *see also Thompson v. Target Corp.*, 2012 WL 12883954, at *1 (C.D. Cal. Aug. 2, 2012) (finding that objections based on Federal Rule of Evidence 408 is premature because "allegations in complaints are generally not considered evidence"). The Court agrees with these courts that the allegations in the 1AC are not subject to the Moving Defendants' evidentiary objections. As such, the Court DENIES the Motion and will not strike paragraphs 5, 8, 25, 29, 21, 89–103 and relevant footnotes from the 1AC.

Defendants also contend that other paragraphs should be stricken, but the Court finds their arguments unavailing. The Moving Defendants assert that the product reviews in paragraphs 57–68 and 77–85 should be stricken because they are "wholly lacking in any indicia of authenticity and . . . [lack] enough information from which one could even properly form a response, much less take discovery in the future," Mot. at 8, but the Moving Defendants provide no authority that one's purported inability to respond to an allegation justifies striking that allegation under Rule 12(f). Similarly, the Moving Defendants argue that allegations referring to or invoking the Federal Trade

Commission's rule[8] or actions (1AC ¶¶ 25, 57–68, 104–06, 113–15) should be stricken, but they fail to provide any support for this conclusory argument other than the rule was "not promulgated until many years after the purported activities that are cited in the [1AC]" and the actions "hav[e] nothing whatsoever to do with the claims in this action" or are not tied to "any actions taken by any of the Defendants." Mot. at 8–9. In contrast, ML Products asserts that these allegations provide the context for this action. Opp'n at 7–8; see *S.G. v. Vagabond Inn Corp.*, 2022 WL 22903718, at *11 (C.D. Cal. Mar. 2, 2022) (denying motion to strike because the allegations at issue provide context for the case). The Court similarly finds that the Federal Trade Commission's rule and actions provide context for this case, as they concern providing compensation for positive reviews, see 16 C.F.R. § 465.4, or manipulating Amazon reviews, see *FTC v. Cure Encapsulations, Inc., et al.*, Case No. 1:19-cv-00982 (E.D.N.Y. Feb. 19, 2019), ECF No. 1 ¶ 14 ("Defendants paid a website . . . for Amazon reviews of their [] product. That website offered Amazon sellers the ability to 'Push your product towards the top!' using 'verified' product reviews that will 'help your product rank better in the internal search engine.'"). Accordingly, the Court DENIES the Motion and will not strike paragraphs 25, 57–68, 104–06, 113–15 and relevant footnotes from the 1AC.

For the first time in their Reply, the Moving Defendants argue that the Court should strike paragraphs 31, 52–54, and 111 from the 1AC because they advance the "straw seller" theory, which the Court rejected in the *Ninestar* Action. See *Ninestar* Action, ECF No. 147 at 19–20. Be that as it may, because the Moving Defendants did not make this argument in its initial moving paper, ML Products could not have addressed it in its Opposition. As such, the Court DENIES the Motion with respect to the purported "straw seller" theory.

In sum, the Court DENIES the Motion with respect to striking certain allegations from the 1AC.

///

---

[8] 16 C.F.R. § 465.4 ("It is an unfair or deceptive act or practice and a violation of this part for a business to provide compensation or other incentives in exchange for, or conditioned expressly or by implication on, the writing or creation of consumer reviews expressing a particular sentiment, whether positive or negative, regarding the product, service, or business that is the subject of the review.").

**D. ML Products Has Adequately Alleged Its Lanham Act Claim.**

The Moving Defendants argue that the 1AC should be dismissed because ML Products has not alleged (1) false representation and (2) damages. Mot. at 11–14. ML Products responds that the 1AC alleges false representation with respect to Amazon reviews, Opp'n at 8–11 (advancing the "paid false positive review" theory and the "reuse of product listing" theory), and that it has sufficiently pleaded damages, *id*. at 11–13.

To address some preliminary matters: First, the Court has already found that ML Products has sufficiently advanced its "paid false positive review" and "reuse of product listing" theories. *See* Section IV. B, *supra*. As such, the Court will proceed to evaluating whether ML Products has sufficiently alleged damages. Second, the Court finds that in arguing that ML Products has failed to sufficiently allege damages, the Moving Defendants have attacked ML Products's statutory standing to bring its Lanham Act claim. As such, in conjunction with whether ML Products has sufficiently alleged damages, the Court will evaluate whether the allegations give rise to standing.

The Court finds that ML Products has sufficiently alleged standing for its Lanham Act claim and damages in support of that claim. In its prior order in the *Ninestar* Action, the Court found that ML Products sufficiently alleged its statutory standing. *See Ninestar* Action, ECF No. 147 at 20–21 (quoting *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129, 131–132 (2014) (holding that to have statutory standing, a plaintiff alleging a Lanham Act violation must show: (1) she is within the "zone of interest" protected by the statute;[9] and (2) that there is proximate cause between her injury and the alleged violation)). As it did in the *Ninestar* Action, ML Products has alleged here that it lost sales because of Defendants' conduct (false advertising, including false paid positive reviews and reuse of product listing). In particular, ML Products has pleaded that its search rankings quickly dropped,[10] 1AC ¶ 118; it could not compete with the products that

---

[9] Defendants do not contend that ML Products is outside the zone of interest. As such, the Court will not discuss this element in this Order.

[10] Contrary to Defendants' argument that the 1AC lacks any allegations about where ML Products's products appeared in Amazon's search results before and after Defendants' alleged conduct, ML Products has sufficiently alleged that its search rankings dropped from the "top" "due to Defendants' conduct." *See* 1AC ¶ 118 (alleging that ML Products was at the "top" of Amazon's organic listing for large market inks and toners and that the rankings quickly dropped).

Defendants sell, *id*. ¶ 119; it is unable to earn the top organic search results, *id*.; it has been forced to concentrate on smaller, niche ink and toner products, *id*. ¶ 120; and it has lost sales because of Defendants' conduct, *id*. ¶ 86. In light of these allegations, the Court finds that ML Products has sufficiently alleged its Lanham Act claim.

The Moving Defendants advance other arguments that ML Products's allegations are insufficient. For instance, Defendants contend that because "no allegation is made that Plaintiff would have secured some (or any) portion of [Defendants'] sales but for any actions taken by Defendants" or that there is no allegation about how, when, or why the alleged conduct has been "successful in inflating Defendants' sales at the expense of sales by Plaintiff," ML Products has not sufficiently pleaded a Lanham Act claim. *See* Mot. at 13. But the Court finds this argument unavailing. As the Ninth Circuit instructs, albeit within the context of Article III standing, "proving a counterfactual is never easy, and is especially difficult when the injury consists of lost sales that are 'predicated' on the independent decisions of third parties; *i.e.*, customers." *Trafficschool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011). It is for this reason that a plaintiff may "prove his injury using 'actual market experience and probable market behavior'" and establish an injury by "creating a chain of inferences showing how defendants' false advertising could harm plaintiff's business." *Id*. Considering the Ninth Circuit's guidance, the Court finds that ML Products' allegations are sufficient for the purposes of this Motion.

The Moving Defendants also assert that because ML Products has alleged that its revenue actually grew, there cannot be an injury. Mot. at 14 (quoting 1AC ¶ 118 ("ML Products has continued to grow its Amazon sales revenues each year since, with an average growth of approximately 33% year-over-year . . . .")). The Court finds this argument unavailing as well. Within the same paragraph, ML Products also alleges that its search rankings "quickly" dropped because of Defendants' alleged conduct, and in the following paragraphs, it alleges that it cannot compete with Defendants and that it is unable to "earn the top organic search results." 1AC ¶¶ 118–20. As the Lanham Act considers not only economic harm but also "reputational injury flowing directly from the deception wrought by the defendant's advertising," the Court finds that ML Products has adequately pleaded a Lanham Act claim. *See Lexmark*, 572 U.S. at 133.

In sum, the Court finds that ML Products has adequately alleged its Lanham Act claim under Rule 9(b) and therefore DENIES the Motion on this ground.

### E. ML Products Has Adequately Pleaded Unfair Competition and False Advertising Claims.

The Moving Defendants argue that because ML Products's Lanham Act claim fails, its Unfair Competition and False Advertising claims also fail. Mot. at 14–17. ML Products responds that contrary to the caselaw cited by the Moving Defendants, it has alleged commercial injuries, and therefore, its state law claims withstand the Motion. Opp'n at 14–16. The Court finds that ML Products's Unfair Competition and False Advertising claims may proceed.

"To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 318 (2011).

As the Court has found above, ML Products has sufficiently alleged wrongful conduct (paid false positive reviews and reuse of product listings) and economic injuries, i.e., injury in fact. *See* Sections IV.B and IV.D, *supra*. Reading these allegations in ML Products's favor, the Court finds that even if ML Products may have increased its revenues by selling smaller, niche ink and toner products, it was compelled to "acquire in a transaction less[] than [it] otherwise would have" or "have a present or future property interest diminished." *See Kwikset*, 51 Cal.4th at 323.

As such, the Court DENIES the Motion with respect to ML Products's Unfair Competition Law and False Advertising Law claims.

### F. ML Products May Pursue Its Disgorgement Claim.

The Moving Defendants argue that ML Products's claim for disgorgement under Unfair Competition Law and False Advertising Law should be dismissed. Mot. at 17. ML Products does not respond to this argument.

The Court finds that the Moving Defendants' argument is based on a misreading of the 1AC. ML Products seeks disgorgement under its *Lanham Act* claim, not under its *state law* claims. *See*

1AC ¶ 137 (seeking disgorgement under the Violation of the Lanham Act cause of action); 15 U.S.C. § 1117 (When . . . a violation under section 1125(a) . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover [] defendant's profits . . . .").

Accordingly, the Court DENIES the Motion with respect to ML Products's disgorgement claim.

### G. ML Products Has Adequately Pleaded a Civil Conspiracy Claim.

The Moving Defendants argue that ML Products's civil conspiracy claim fails because it has not successfully alleged (1) any underlying tort by each defendant and (2) damages. Mot. at 18. ML Products responds that its allegations permit an inference of a wrongful agreement and that "[t]he rest of the elements of civil conspiracy flow naturally from the [1AC]." Opp'n at 17. The Court finds that ML Products has sufficiently pleaded its civil conspiracy claim.

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994). "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Id.* at 511 (internal quotation marks and citation omitted). "The conspiracy may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." *117 Sales Corp. v. Olsen*, 80 Cal. App. 3d 645, 649 (1978).

The Court finds that ML Products's allegations permit an inference that Defendants have come to an agreement to engage in the paid false positive reviews and the reuse of product listing schemes. The Court has found above that ML Products has sufficiently alleged that at least one customer changed their review because of HaloFox's conduct and that Palmtree has reused reviews of an older product. *See* Section IV.B, *supra*. Allegedly, HaloFox and Palmtree are affiliated with Sailing Technology (as the holder of the Chinese trademark for the brand) and Ding Yan (the

President of Sailing Technology). See Section IV.B.1, *supra*. In turn, Ding Yan is affiliated with Mountain Peak and Billiontree, both of which are affiliated with Jian Zhou. See *id*. Although the 1AC does not allege the substance of the agreement that may exist between Defendants, a plaintiff need not set forth facts that are "in the exclusive possession of the defendants" under Rule 9(b). See *Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir. 1987) (discussing the rule in a securities fraud case). Reading these allegations in ML Products's favor, the Court finds that the 1AC's allegations permit an inference that Defendants have formed and operated a conspiracy to pay customers for false positive reviews and to reuse old product listings.[11]

Furthermore, the Court has found above that ML Products has adequately pleaded that it suffered harm because of Defendants' conduct. See Section IV.D, *supra*. Because "[t]he gist of an action charging civil conspiracy is not the conspiracy but the damages suffered," the Court finds that ML Products has sufficiently alleged its civil conspiracy claim at this stage. See *117 Sales*, 80 Cal. App. 3d at 649.

Accordingly, the Court DENIES the Motion with respect to ML Products's civil conspiracy claim.

# CONCLUSION

For the foregoing reasons, the Court DENIES the Motion.

IT IS SO ORDERED.

Dated: July 14, 2025

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

---

[11] In the Reply, the Moving Defendants rely on Rule 9(b) to assert that ML Products must allege more to establish that Defendants are interrelated. See Reply at 7–10. Be that as it may, the Court reminds the Moving Defendants that this is a motion to dismiss; they are free to set forth countering evidence in their motion for summary judgment or at trial to show that ML Products's allegations lack factual basis.