UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ML PRODUCTS INC., <br><br> Plaintiff, <br><br> v. <br><br> BILLIONTREE TECHNOLOGY USA, INC., MOUNTAIN PEAK. INC., and DOES 1 through 25, inclusive, <br><br> Defendants. | Case No.: 2:23-cv-08626-MEMF-DTB <br><br> **ORDER DENYING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS BILLIONTREE TECHNOLOGY USA, INC. AND MOUNTAIN PEAK. INC. [ECF NO. 97]** |

Before the Court is the Motion for Summary Judgment (ECF No. 97) filed by Defendants. For the reasons stated herein, the Court hereby DENIES the Motion for Summary Judgment.

### I.     Background

#### A.     Factual Background

The present action concerns the competition for sales on Amazon.com between printer toner retailers: on the one hand, Plaintiff ML Products Inc. ("ML Products"), and, on the other hand, Defendant BillionTree Technology USA, Inc. ("BillionTree") and Defendant Mountain Peak, Inc. ("Mountain Peak"; collectively, the "Defendants"). In this action, ML Products accuses the Defendants of employing fraudulent tactics to boost their sales, and, in turn, harm ML Products.

/ / /

**B. Procedural History**

On April 21, 2025, ML Products filed the First Amended Complaint alleging causes of action against Defendants for violations of: (1) the Lanham Act; (2) California's Unfair Competition Law; (3) California's False Advertising Law; and (4) Civil Conspiracy. ECF No. 101.

Prior to the filing of the First Amended Complaint, the Court heard and ruled on a Motion for Preliminary Injunction filed by ML Products. ECF No. 54 ("PI Order").

On April 17, 2025, Defendants filed the instant Motion for Summary Judgment. ECF No. 97 ("Motion.") Defendants also filed the Joint Appendix of Undisputed and Disputed Fact, ECF No. 97-2 ("AUF"); Joint Evidentiary Appendix, ECF No. 97-3 ("Appendix"); Joint Appendix of Objections to Evidence, ECF No. 97-4 ("Evidentiary Objections"); Defendants' Proposed Order on Evidentiary Objections, ECF No. 97-5; ML Products' Proposed Order on Evidentiary Objections, ECF No.97-6; Defendants' Proposed Order on the Motion for Summary Judgment, ECF No. 97-7; and Exhibits 1 through 29, ECF No. 97-8–97-35.

On May 19, 2025, the Defendants filed a Motion to Dismiss. ECF No. 114. On July 14, 2025, the Court denied the Defendants' Motion to Dismiss. ECF No. 139 ("MTD Order").

## II.    Applicable Law

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Under Federal Rules of Procedure ("Rule") 56(a), a court also has authority to grant *partial* summary judgment, or "judgment on less than the entire case." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2737 (4th ed. 2022) (citing Fed. R. Civ. P. 56(a)). Under Rule 56(g), a court that "does not grant all the relief requested by the motion . . . may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Id.*

Where a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *Id.* at 1102–03. In such cases, the nonmoving party may defeat the motion for summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Liberty Lobby*, 477 U.S. at 248–49. Under these circumstances, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238

(9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252. To carry its ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no genuine issue of material fact for trial. *Nissan Fire & Marine Ins. Co*, 210 F.3d at 1102; *Celotex Corp.*, 477 U.S. at 323.

## III. Findings of Fact[1]

The Court finds the following material facts are established for trial under Federal Rules of Civil Procedure 56(a) and 56(g):

BillionTree operated from January 30, 2013, to March 30, 2020. AUF ¶¶ 2, 3. Jian Zhou was the incorporator, director, and officer of BillionTree. *Id.* ¶ 4. BillionTree was registered to a Harrison Avenue address located in the City of Industry. *Id.* ¶ 40. BillionTree registered the trademark for Toner Kingdom. *Id.* ¶ 5. The Toner Kingdom trademark was transferred to Jian Zhou upon the dissolution of BillionTree. *Id.*

Toner Kingdom sells cartridges on Amazon. *Id.* ¶ 11. Toner Kingdom has been identified on Amazon as a brand that engaged in algorithm manipulation by offering to pay customers for positive reviews, featuring reviews from older products inappropriately linked to its Brother TN227 product

---

[1] The facts set forth below are taken from the parties' respective Joint Appendix of Undisputed and Disputed Facts. *See generally* AUF. To the extent that any statements of fact are omitted, the Court concludes they are not material to the disposition of this Motion. To the extent that any of the facts set below were allegedly disputed, the Court concludes that no actual dispute exists or that the adopted language resolves the dispute.

In making these Findings of Fact, the Court considered the Joint Appendix of Objections to Evidence. *See generally* Evidentiary Objections. The Court did not find any evidence objected to essential to finding any fact stated herein, and therefore need not reach the Evidentiary Objections except as explicitly addressed in the Order.

page giving the false impression that the reviews applied to the product, and asking customers to change negative reviews into positive ones in exchange for a gift card. *Id.* Several ink and toner brands share a registration phone number with Toner Kingdom, including Greensky, Starover, HaloFox, CMYBabee, 7Magic, ONLYU, and COLORKING. *Id.* ¶ 48.

Mountain Peak provides warehousing services and commercial business trading. *Id.* ¶ 7. Jian Zhou is the CEO of Mountain Peak. Ex. 5 ¶ 4. Ding Yan is the sole investor, incorporator, and a shareholder of Mountain Peak. AUF ¶¶ 9, 10, 35. Mountain Peak used the same Harrison Avenue address as BillionTree for its operations. *Id.* ¶ 40. Mountain Peak operated an Amazon storefront called OfficeHelper, which was suspended from Amazon. *Id.* ¶¶ 8, 42.

Sailing Technology promoted Mountain Peak as its US overseas warehouse and listed Mountain Peak's address on its website. *Id.* ¶ 31. Four Amazon seller accounts were opened using a similar address to Mountain Peak's. *Id.* ¶ 47. Greensky is listed at Harrison Ave, Walnut CA 91789; Yukaka Shop is listed at Unit YOYO 19945 Harrison Ave, Walnut CA 91789; and Ace Tech is listed at 19945 Harrison Ave, Walnut CA 91789. *Id.*

ONLYU, 7Magic, COLORKING, and OfficeHelper are products. *Id.* ¶ 9. The Shenzhen Yangfan Technology Company owns the ONLYU and 7Magic trademarks. *Id.* Both the trademarks' correspondence information lists Ding Yan as a contact. *Id.* Ding Yan registered the trademarks for ONLYU and 7Magic. *Id.* ¶ 7. Ding Yan owned COLORKING's trademark until transferring it to Caixa Zhang. *Id.* ¶ 49. Mountain Peak owns the OfficeHelper trademark. *Id.* OfficeHelper's trademark registration lists Ding Yan as the correspondent contact. *Id.* Quimat, Inc. ("Quimat") owns the Hotoink trademark. *Id.* ¶ 7. Quimat's address is similar to Mountain Peak's. *Id.* ¶ 9, 51. Yintao Chen is listed in the Statement of Incorporation as the incorporator of Quimat Inc. *Id.* ¶ 52.

ML Products sells replacement ink and toner cartridges on Amazon. *Id.* ¶ 54.

### IV. Discussion

Defendants move for summary judgment on ML Products' standing and alter ego liability arguments. *Id.* Defendants also move for summary judgment on ML Products' first claim for false statements and representations of fact in violation of the Lanham Act, second claim for unfair competition in violation of Cal. Bus. & Prof. Code § 17200, and third claim for false advertising in

violation of Cal. Bus. & Prof. Code § 17500. *See generally* Motion. For the reasons discussed below, the Court finds that there are disputed issues of material facts as to ML Products' claims of Article III standing, alter ego liability, violations of the Lanham Act, unfair competition, and false advertising.

ML Products argues that Defendants rely on undisclosed evidence. The Court finds that Defendants do not rely on undisclosed evidence to support their Motion. ML Products requests a continuance and certain documents from Defendants under Rule 56. Motion at 63–64. The Court DENIES the request as ML Products failed to diligently pursue discovery.

### A. A Genuine Issue of Material Fact Prevents This Court from Granting Summary Judgment in the Defendants' Favor With Respect to Article III Standing.

A plaintiff cannot bring a generalized grievance; instead, they must show a personal stake in the outcome of the controversy to establish Article III standing. *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018). To demonstrate Article III standing, a plaintiff must plausibly plead facts to establish that: (1) they suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 1173.

Here, the Court finds that a genuine issue of material fact prevents this Court from granting summary judgment in the Defendants' favor with respect to Article III standing. Contrary to the Defendants' assertions, ML Products has produced evidence in support of all three elements of standing by way of the expert report of Professor Brett Hollenbeck[2] and the deposition testimony of Mark Schwanauer.[3] Hollenbeck opines—based upon evidence in the record and reasonable

---

[2] Professor Brett Hollenbeck is an associate Professor of Marketing at UCLA Anderson School of Management. Ex. 16 to the MSJ, ECF No. 97-23 ("Hollenbeck Report") at ¶ 1. He regularly conducts research and consults on fake reviews and the impact on sales and consumers. *Id.* ¶¶ 1–6. His Report is the subject of a Daubert Motion by the Defendants, which this Court denies in large part in a separate order. The Court notes that the Defendants object to the Hollenbeck Expert Report. Evidentiary Objections at 5. The Court excludes paragraphs containing legal conclusions. *See* Ex. 16 ¶¶ 9–10, 22–24, 98–99.

[3] Mark Schwanauer is the sole shareholder of ML Products and the person most knowledgeable for ML Products. Ex. 14 to the MSJ, ECF No. 97-21 ("Schwanauer Depo.") at 1; 19:10–12. The Court notes the Defendants have made evidentiary objections to Exhibit 28. Evidentiary Objections at 6. However, the deposition is helpful for ascertaining facts despite ML Products' mischaracterizations of the deposition.

1  assumptions—that "BillionTree artificially increased sales and visibility on the Amazon platform,
2  and therefore harmed their competitors [including ML Products] by directly hurting their sales and
3  indirectly hurting sales by lowering their visibility." Hollenbeck Report at ¶100. Hollenbeck gives
4  several examples of the conduct complained of. *See id*. at ¶¶ 28–84. These include conduct
5  associated with the Toner Kingdom brand. *See, e.g., id.* at ¶¶ 31, 41. Because the Toner Kingdom
6  brand is undisputably one of the Defendants' brands, this would demonstrate standing even without
7  alter ego liability. Schwanauer testified that, due to Defendants' conduct, ML Products had to shift
8  its sales focus to smaller, niche ink and toner products to stay competitive. Schwanauer Depo. at 93-
9  97:7-17. This is sufficient evidence upon which a jury could find that ML Products suffered an
10 injury in fact (hurt sales), the injury was caused by the Defendants' conduct (of manipulating
11 product ratings), and it is likely that the injury would be redressed by a favorable decision (in the
12 nature of monetary damages).
13     Defendants point to numerous purported deficiencies in the deposition testimony of Mark
14 Schwanauer, but these are not enough to eliminate the genuine issue of material fact created by his
15 testimony and that of Professor Hollenbeck. It is for the jury to determine if those deficiencies are
16 fatal to ML Products' claims.
17     Similarly, the Court finds that the fact that sales have increased, and the fact that ML
18 Products sought and obtained a COVID-19 loan, do not foreclose the possibility that the Defendants'
19 conduct hurt sales; that is, that but for Defendants' conduct, the sales would have been higher.

### B. There is a Dispute of Material Fact as to ML Product's Alter Ego Liability Claim.

21     A plaintiff must plead two elements to establish alter ego liability under California law: "(1)
22 that there be such unity of interest and ownership that the separate personalities of the corporation
23 and the individual no longer exist and (2) that, if the acts are treated as those of the corporation
24 alone, an inequitable result will follow." *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300
25 (1985) (internal quotation marks omitted). The same elements apply where multiple entities are
26 sought to be held liable instead of any individual. *Id*. California courts have created a list of non-
27 exhaustive factors tending to show a unity of interest and ownership:

>inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002). No single factor is dispositive. *Id*. at 244. "[A]lter ego is an extreme remedy, sparingly used ...." *JPV I L.P. v. Koetting*, 88 Cal. App. 5th 172, 189 (2023).

Here, on the motion for preliminary injunction previously filed by ML Products, this Court held that ML Products had not presented evidence sufficient to show a likelihood of success on the issue of alter ego liability. PI Order at 5–10. Defendants argue—and ML Products does not dispute—that it has not presented any additional evidence of alter ego liability at the summary judgment stage, despite the opportunity to engage in substantial discovery. Given that the preliminary injunction standard is by definition an easier standard to meet and given that ML Products has not introduced any additional evidence of alter ego liability into the record, it might appear that ML Products cannot defeat the Defendants' motion on this ground.

However, the question on ML Products's preliminary junction was ML Products's likelihood of success. On the motion for summary judgment, the Court is not determining how likely it is that ML Products can ultimately succeed, but whether it has created a genuine issue of material fact at all. Given the nature of the test for alter ego liability, it appears that ML Products's evidence—however slight it may appear to the Defendants—is enough to create a genuine issue of material fact as to this issue. The Court therefore denies summary judgment to Defendants on this ground.

The Court notes, however, that it appears that the determination of alter ego liability may be a question for the Court and not the jury. It also appears that the Court's ultimate determination on alter ego liability may affect what evidence is presented at the trial on the substantive causes of action and will affect the arguments made by the parties and the questions put before the jurors. Accordingly, the parties will be ordered to meet and confer with respect to whether alter ego liability is a question for the Court and, if so, how any bench trial on alter ego liability shall be sequenced with the trial on the substantive causes of action.

**C.     There is a Dispute of Material Fact as to ML Products's Lanham Act Claim.**

Section 43(a) of the Lanham Act prohibits the use of false representations and false designations of origin in the advertising and sale of goods and services. *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994). To prevail on its Lanham Act claim, ML Products must prove "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id*.

Here, the Court finds that ML Products has created a genuine issue of material fact with respect to its Lanham Act claim.

First, ML Products has created a genuine issue of material fact with respect to the first element—false statement. In its MTD Order, the Court found that the allegations concerning reused product listings and paid reviews met the Rule 9(b) standard for allegations of a false statement. In light of the evidence presented in the Hollenbeck Report concerning allegedly reused product listings and alleged paid reviews, ML Products has created a genuine issue of material fact. Hollenbeck defines "fake reviews" and "review hijacking" and describes negative review suppression and rating manipulation methods. Hollenbeck Report ¶¶ 22–25. Hollenbeck opines that the products he reviewed engaged in review hijacking and offered payment in exchange for turning negative reviews into positive ones. *Id.* ¶¶ 98–99. For example, the Greensky Product HP 63XL product had reviews linked to it from different products, including the Brother LC223 XL. *Id.* ¶ 28. ML Products has thus created a genuine issue of fact as to whether Defendants made a false statement through review hijacking because Defendants, through their alleged affiliates, reused

product listings for unrelated products constituting false statements under the Lanham Act. Additionally, ML Products has created a genuine issue of fact as to whether Defendants made a false statement because Defendants' actions—offering gift cards through the brands in exchange for better reviews—caused customers to change their reviews to a higher rating and thereby added false statements.

In the hearing, Defendants argued that the screenshots of reviews on Amazon were not presented in the admissible form as the reviews from customers are inadmissible hearsay.[4] In response, ML Products contended that the reviews could come into evidence under the hearsay exception of a party opponent's statement or a business record. The reviews are hearsay within hearsay as the reviews from the customers are the outer layer of hearsay and the customers recounting what the brands said when contacting the customers are the inner layer of hearsay.[5] Fed. R. Evid. 805. ML Products probably cannot pierce the outer layer of hearsay under the business records hearsay exception because (1) it is unlikely they can subpoena Amazon and receive a response in time; and (2) it would be difficult to show that the reviews were made at or near the time by—or from information transmitted by—someone with knowledge, the reviews were kept in the course of a regularly conducted activity of Amazon's business, making the reviews was a regular practice of that activity, all these conditions are shown by the testimony of the custodian or another qualified witness, and Defendants do not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.[6] Fed. R. Evid. 803. ML Products

---

[4] The Ninth Circuit has recognized that "a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir.2003) (quoting *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (emphasis added)). In other words, when evidence is not presented in admissible form at summary judgment but could be later presented in an admissible form at trial, a court may still consider the evidence for the purposes of summary judgment. *Id*. at 1037; see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.")

[5] "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.

[6] If admitted, the record of a regularly conducted activity may be read into evidence but may be received as an exhibit only if offered by an adverse party. Fed. R. Evid. 803. A record of an act, event, condition, opinion, or

could pierce the inner layer of hearsay under the party opponent hearsay exception as the customers share that the allegedly affiliated brands said that they would pay customers in exchange for better reviews, which are statements that could have come from representatives of the brands, a person authorized by the brands to make the statement, or the brands' employees or agents.[7] Fed. R. Evid. 801.

Defendants also argued that the review hijacking—products linked to reviews from past products–are inadmissible as Hollenbeck cannot authenticate them. However, it appears to the Court that Hollenbeck can authenticate the review hijacking because (1) Hollenbeck had personal knowledge of the past reviews being linked to other products as he downloaded and analyzed the reviews; and (2) in the Hollenbeck Expert Report, he states that "I downloaded reviews from the product page for each of these products between February 13 and March 21, 2024. . . . I also accessed the reviews by navigating to each product page between March 7 and April 10, 2024, where I captured additional data. . . I received data on a second set of products from McCune Law Group. Because this information came later, in some cases these products' pages on Amazon had already been removed. Nevertheless, using versions of these pages scraped by third-party sources, namely the Wayback Machine (https://web.archive.org/), I recovered the evidence."[8] Hollenbeck Report ¶¶ 26, 27.

---

diagnosis may come into evidence if: "(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id*. !

[7] Statements are not hearsay if they are offered against an opposing party and: "(A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy." Wright & Miller's Federal Practice and Procedure § 6771 (2025 ed.); Fed. R. Evid. 801(d)(2)(a).

[8] Evidence introduced in court must be authenticated or proven to be what it is claimed to be. Fed. R. Evid. 901. A witness with personal knowledge may testify that the evidence is genuine. *Id*.

Second, ML Products has created a genuine issue of material fact with respect to the second element—deception or a tendency to deceive. Hollenbeck describes review hijacking as implicitly misrepresenting the product as having more ratings and reviews than it does, which is deceptive to customers. *Id.* ¶¶ 23, 98. Additionally, he describes rating manipulation methods as likely to mislead customers. *Id.* ¶ 25. ML Products has thus created a genuine issue of fact as to whether the statements had a tendency to deceive a substantial segment of its audience because, according to Hollenbeck, review hijacking and rating manipulation create the false impression to customers that the products received positive reviews.

Third, ML Products has created a genuine issue of material fact with respect to the third element—materiality. Hollenbeck explains that reviews have a large impact on sales and rankings. *Id.* ¶ 20. Hollenbeck cites studies finding that even a single review can impact sales because customers typically only read a small number of the top reviews posted on a product's page. *Id.* ¶ 19. Hollenbeck explains that "the inflated ratings of BillionTree's products will lead more customers to choose them than they otherwise would if the reviews were not manipulated." *Id.* ¶¶ 93–95. ML Products has thus created a genuine issue of fact as to whether the deception is material by citing various studies explaining how review manipulation impacts customers' purchasing decisions.

Fourth, ML Products has created a genuine issue of material fact with respect to the fourth element—interstate commerce. ML Products asserts that the allegedly false statements were made on Amazon, which Hollenbeck describes as the "world's largest online retailer." *Id.* ¶ 12. ML Products has thus created a genuine issue of fact as to whether Defendants caused its false statements to enter interstate commerce through selling products on Amazon.

Fifth, ML Products has created a genuine issue of material fact with respect to the fifth element—injury or likelihood of injury. Hollenbeck asserts that ML Products directly competes with Defendants for sales because the products are close substitutes that compete in narrow product categories. *Id.* ¶ 93. Schwanauer testifies that as a result of Defendants' conduct, ML Products had to change its focus and concentrate on sales of smaller, niche ink and toner products. Schwanauer Depo. 93-97:7-17. ML Products has thus created a genuine issue of fact as to whether it is likely to be injured as a result of the false statements through direct diversion of sales from ML Products to

12

1  Defendants because it presents evidence of competing for sales and changing its products sold due to
2  alleged Lanham Act violations. Accordingly, ML Products has created a genuine dispute of fact as
3  to whether Defendants violated the Lanham Act.

        **D.    There is a Dispute of Material Fact as to ML Products's Unfair Competition Claim.**

California's unfair competition law ("UCL") prohibits unfair competition, including unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising. Cal. Bus. Code § 17200. Violations of federal statutes can serve as the predicate for a cause of action under the UCL. *L.A. Mem'l Coliseum Com. v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 805 (2015). Here, the Court finds that there is a dispute of material fact as to ML Products's unfair competition claim.

An unlawful business act includes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*, 332 Cal. Rptr. 3d 812, 837 (2025) (citation omitted). "Virtually any statute or regulation (federal or state) can serve as a predicate for a UCL unlawful practice cause of action." *Id*. Here, ML Products has raised a genuine dispute of fact as to whether Defendants violated the Lanham Act. *See* § IV, C. As a result, Defendants' alleged violations of the Lanham Act may serve as a predicate for ML Products's cause of action under the UCL.

Courts consider the following tests to determine whether a business practice is unfair under the UCL: "(1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law,' (citation omitted); (2) whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' (citation omitted); or (3) whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer.'" (citation omitted). *Id*.

Here, ML Products has raised a genuine dispute of fact as to whether Defendants' unfair business practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Hollenbeck cites several instances where customers describe the offering of payment in exchange for changing their negative reviews into positive ones as unethical. Hollenbeck Report ¶¶

41 ("I was contacted by the seller shortly after purchasing offering a gift card in exchange for a positive review—this is unethical."); 60 ("Received email 2/25 stating company would give me $95 Amazon gift card or replace my order if I changed my review to 4 or 5 stars. I'm sure this happens all the time, but still paying for positive reviews is unethical."), 68 ("UPDATE: when I posted this review, the company contacted me and tried to bribe me to change the review by offering me another set of these defective cartridges, or a $65 gift card on Amazon. This makes me certain that no one should ever deal with an unethical company such as this."). Such a practice can be perceived as unethical and injurious to consumers under the UCL because changing negative views into positive ones has a tendency to deceive unsuspecting customers who will make purchasing decisions based on dishonest information while unaware that the reviews were made under financial incentive.

"A fraudulent business practice is one which is likely to deceive the public." *Id*. at 836. Representations to the public that are untrue or true but tend to mislead or deceive constitute a fraudulent business practice. *Id*. A true statement that it is likely to mislead or deceive the consumer, such as failing to disclose other relevant information, are actionable under the UCL. *Id*. "The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." *Id*.

Here, ML Products has raised a genuine dispute of fact as to whether Defendants' business practice is fraudulent. Hollenbeck explains that review hijacking and offering payment for better reviews inflate the ratings of BillionTree's products, lead customers to choose products they otherwise would not have if the reviews were not manipulated, and hurt competitors' sales. Hollenbeck Report ¶ 93. Review hijacking is fraudulent because it misleads customers to believe that a product has received more reviews than it actually has and inappropriately links reviews from past products to a different product. Offering payment in exchange for better reviews is fraudulent because it deceives customers and leads them to incorrectly believe that the review is genuine, particularly where there is no disclosure indicating that the review was written under a financial incentive.

To state a claim under the UCL based on false advertising, it is necessary to show that members of the public are likely to be deceived; "this is determined by considering a reasonable

consumer who is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is the ordinary consumer within the target population." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013). Here, ML Products has raised a genuine dispute of fact as to whether Defendants engaged in false advertising under the UCL. As discussed above, Hollenbeck explains that rating manipulation methods "are likely to mislead customers . . ." as "customers typically only read a small number of the top reviews posted on a product page." Hollenbeck Report ¶¶ 19, 25. Because most customers only read a small number of top reviews, they are susceptible to deception and not suspicious of deceptive advertising practices.

Thus, there is a genuine dispute of material fact as to ML Products's unfair competition claim.

### E. There is a Dispute of Material Fact as to ML Products's False Advertising Claim.

California's false advertising law ("FAL") makes it unlawful to induce the public to enter into any obligation based on an untrue or misleading statement, which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. *Davis v. HSBC Bank*, 691 F.3d 1152, 1157 (9th Cir. 2012) (citing Cal. Bus. & Prof. Code § 17500). Unless the advertisement targets a particular disadvantaged or vulnerable group, whether a business practice is deceptive or misleading is governed by the reasonable consumer test. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1012 (9th Cir. 2020). "Plaintiffs must show that members of the public are likely to be deceived. This requires more than a mere possibility that the defendants' label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*.

Here, the Court finds that there is a dispute of material fact as to ML Products's false advertising claim. ML Products has raised a genuine dispute of fact as to whether Defendants violated the Lanham Act. *See* § IV, C. As a result, ML Products' FAL claim is substantially congruent to its claims made under the Lanham Act. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are

'substantially congruent' to claims made under the Lanham Act"). Defendants' alleged violations of the Lanham Act may serve as a support for ML Products' cause of action under the FAL.

Moreover, Hollenbeck describes Defendants' conduct as review hijacking and offering payment in exchange for better reviews. Hollenbeck Report ¶¶ 9, 10. According to Hollenbeck, such practices expose customers to untrue and misleading statements because they lead customers to wrongfully believe that reviews from past products relate to another product and that positive reviews are genuine. Hollenbeck explains that the average customer is likely to fall victim to the deception because "customers typically only read a small number of the top reviews posted on a product page." Ex. 16 ¶ 19. Thus, a reasonable customer could be led by the false and misleading statements.

Therefore, there is a genuine dispute of material fact as to ML Products's false advertising claim.

### F. Defendants Do Not Rely on Undisclosed Evidence.

Rule 26 requires that parties "must, without awaiting a discovery request, provide to the other parties . . . a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii). Under Rule 37, if a party fails to offer information as required by Rules 26(a) and 26(e), the party is not allowed to use that information as evidence on a motion unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

ML Products argues that the Motion should be denied because Defendants rely on undisclosed evidence to assert undisputed facts. Motion at 60–62. ML Products does not identify the undisclosed evidence purportedly relied upon by the Defendants, and the Court will therefore not deny the Motion on this ground.

Accordingly, because Defendants are not relying on undisclosed evidence, ML Products is not entitled to any relief under Rule 37.

/ / /

/ / /

### G. The Court Need Not Reach the Request for Continuance.

Under Rule 56(d), a trial court may order a continuance on a motion for summary judgment if the party requesting a continuance submits affidavits showing that, without Rule 56 assistance, it cannot present facts necessary to justify its claims. The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." (citation omitted). *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).[9] However, failure to comply with such requirements "is a proper ground for denying discovery and proceeding to summary judgment." *Id*. Additionally, "failure to conduct discovery diligently is grounds for denial of a Rule [56(d)] motion.". *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002).

Here, ML Products complies with the procedures set in Rule 56 as ML Products has submitted a declaration in support of its request. *See* ECF No. 140 ("Declaration of Vogel" or "Vogel Decl."). ML Products has set forth the specific documents it seeks, as ML Products requests Defendants' invoices, financial records, employment records, and communications between Defendants and the alleged affiliates. Motion at 63. ML Products argues that the testimony of the CEO of Mountain Peak, Vivian Wang, confirms the existence of the documents sought as Wang states, "[Mountain Peak supervisors] asked us if we could open an Amazon account to sell things," which contradicts Defendants' assertion that Mountain Peak primarily operates as a warehouse.

---

[9] At the time the Ninth Circuit issued its decision in *Family Home and Finance Center*, the relevant provision concerning a continuance was contained in Rule 56*(f)*. It is now contained in Rule 56*(d)*:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> **(1)** defer considering the motion or deny it;
>
> **(2)** allow time to obtain affidavits or declarations or to take discovery; or
>
> **(3)** issue any other appropriate order.

Fed. R. Civ. P. 56.

Vogel Decl. at 3. ML Products asserts that the sought-after-documents are essential to ML Products' alter ego liability claim because "they would demonstrate commingling of funds, overlapping employees between entities and brands, and undercapitalization." Motion at 63. The Court agrees that if Defendants produced their financial records, it may reveal information relevant to proving an alter ego liability claim, such as inadequate capitalization, commingling of funds and other assets of the two entities, or the holding out by one entity that it is liable for the debts of the other.

Defendants argue that ML Products failed to diligently pursue discovery as it missed the February 12, 2025 Fact Discovery Cut-Off deadline and failed to file a motion to compel, which is grounds for denial. *See* ECF No. 73 at 3 ("Order Modifying Pretrial Scheduling Order"); *Pfingston*, 284 F.3d at 1005. In *Pfingston*, the defendant moved for summary judgment, and the plaintiff sought a continuance under Rule 56 in light of discovery that had not yet been produced. The Ninth Circuit found that the district court did not abuse its discretion in denying the continuance given that waited to propound discovery, filed a defective request shortly before the discovery cut-off, did not respond to the defendant's objections to the defective discovery, and did not move to compel. *Pfingston*, 284 F.3d at 1005. According to the Defendants, ML Products is in the same position, and this Court is bound to reach the same result.

After the Motion was filed, however, this Court extended the discovery cut-off to the end of July. ECF No. 99.  And due to that extension, it appears that ML Products is continuing to litigate a number of discovery requests and indeed has motions to compel pending before the assigned Magistrate Judge. However, because the Court has determined that the Motion for Summary Judgment should be denied, the Court need not reach the request for a continuance.

Accordingly, the Court DENIES the request for continuance AS MOOT.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.     **Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Court DENIES summary judgment as to all issues.
2. The Court DENIES the request for a continuance AS MOOT.
3. The parties are ORDERED to meet and confer regarding the nature and timing of any trial on alter ego liability and file a joint status report of no greater than 5 pages on this issue by August 22, 2025.

IT IS SO ORDERED.

Dated: August 20, 2025

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge