O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ML PRODUCTS INC., | Case No.:  2:23-cv-08626-MEMF-DTB |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO MODIFY UNIFORM PRETRIAL SCHEDULING ORDER AND EXTEND DEADLINES [DKT. NO. 164] , AND DENYING AS MOOT THE PARTIES' JOINT STIPULATION TO EXTEND SCHEDULING DEADLINES [DKT. NO. 187]** |
| v. | |
| BILLIONTREE TECHNOLOGY USA, INC., MOUNTAIN PEAK, INC., and DOES 1 through 25, inclusive; | |
| Defendants. | |

Before the Court is the Motion for Modification of Uniform Pre-Trial Scheduling Order and an Extension of Deadlines filed by Plaintiff ML Products Inc. Dkt. No. 164. For the reasons explained below, the Motion is GRANTED. As that Motion's requested relief exceeds that requested by the parties' Joint Stipulation to Extend Scheduling Deadlines, Dkt. No. 187, the Joint Stipulation is DENIED AS MOOT.

///

I.    **Background**

A.  **Factual Background[1]**

The parties are competing retailers. 1AC ¶ 9–10. Plaintiff ML Products Inc. ("ML") is a California-based corporation that operates as an online distributor and retailer. *Id.* ¶ 9. It sells toner and ink to wholesalers, retailers, and consumers. *Id.* It sells products online through Amazon. *Id.* Defendant BillionTree Technology USA, Inc. ("BillionTree") is a California-based corporation that also sells toner and ink cartridges on Amazon. *Id.* ¶¶ 11, 12. When BillionTree was dissolved on March 3, 2020, Defendant Mountain Peak, Inc. ("Mountain Peak") took over as the business operating BillionTree's brands and shell companies. *Id.* ¶ 11.

ML alleges that BillionTree and Mountain Peak (collectively, "Defendants") have "successfully deployed numerous false, deceptive, unfair, or otherwise unlawful tactics in order to inflate their retail sales at the expense of [ML's] sales." *Id.* ¶ 1. It claims that Defendants' tactics "are designed to manipulate Amazon's algorithm into artificially elevating their listings to higher priority positions in the organic search results for keywords relating to ink and toner." *Id.* ¶ 3. Defendants allegedly "employ these tactics so that their products appear higher up and on the first page or pages of search results and thus garner greater sales while at the same time bumping down their competitors' products and thus decreasing their competitors' sales." *Id.* ML alleges that Defendants' tactics include commissioning fake product reviews; compensating customers to add, change, or remove product reviews; accepting fake orders that Defendants pay for themselves; and using "ghost" accounts to manufacture the false impression of interest in Defendants' products. *Id.* ¶ 4. ML alleges that Defendants have compounded this problem by deploying these tactics "in combination with their use of multiple seller accounts that appear to offer competing products to the consumer." *Id.* ¶ 7. As such, ML alleges, Defendants have "employ[ed] a deception to manipulate

---

[1] Unless otherwise indicated, the following factual background is derived from the operative First Amended Complaint. Dkt. No. 101 ("1AC"). The Court makes no findings, at this stage, regarding the truth of Plaintiff's allegations contained therein.

the Amazon algorithm, designed to elevate the product in question to a higher ranking and an earlier position in Amazon's organic search results." *Id.* ¶ 5.

ML brings the following claims against Defendants: (1) violations of the Lanham Act, 15 U.S.V. § 1051 et seq; (2) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq; (3) violations of California false advertising law, Cal. Bus. & Prof. Code § 17500 et seq; and common-law civil conspiracy. *See generally* 1AC.

### B. Procedural History

ML filed this action in federal court on October 12, 2023. *See generally* Dkt. No. 1. It amended to the operative First Amended Complaint on April 21, 2025. *See generally* 1AC.

This Court set a Civil Trial Order detailing pretrial and trial deadlines. Dkt. No. 41. On April 16, 2025, it was amended to reflect a fact discovery cut-off date of July 30, 2025. Dkt. No. 99.

On June 12, 2025, ML filed a Motion to Compel. Dkt. No. 130 ("MTC"). On September 5, 2025, Magistrate Judge David T. Bristow granted Plaintiff's Motion to Compel in part. Dkt. No. 159 ("MTC Order").

ML filed the instant Motion for Modification of Uniform Pretrial Scheduling Order and Extension of Deadlines on September 19, 2025. Dkt. No. 164 ("Motion"). Defendants filed their opposition on October 8, 2025. Dkt. No. 169 ("Opp."). ML filed a reply on October 9, 2025. Dkt. No. 170 ("Reply"). This Court held a hearing on the Motion on December 4, 2025, where it took the Motion under submiss

### II.  Applicable Law

A scheduling order may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause exists when the scheduling order's deadlines "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment. "While a court may take into account any prejudice to the party opposing modification of the scheduling order, 'the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification.'" *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), aff'd sub nom. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373

(2015) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

When ruling on a motion to amend a Rule 16 scheduling order to reopen discovery, the Ninth Circuit has instructed district courts to consider these additional factors: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the nonmoving party would be prejudiced by the reopening of discovery, (4) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (5) the likelihood that the discovery will lead to relevant evidence. *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017).

### III.  **Discussion**

This Court first addresses whether ML has demonstrated diligence as a threshold matter, then addresses the remaining factors that the Ninth Circuit has instructed this Court to consider. In sum, because ML has demonstrated that it has been diligent in seeking discovery, and because good cause exists to reopen fact discovery, the Motion is granted.

#### A.  **ML has shown diligence.**

At the outset, this Court must determine whether the scheduling order's deadlines "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment. "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. For the reasons below, this Court finds that ML has sufficiently shown its diligence. Based on the parties' briefing and this Court's understanding of the timeline—which it details below—ML appears to have been making regular efforts to seek discovery since early 2024.

ML first served written discovery requests to Defendants on February 18, 2024. Declaration of Dana R. Vogel, Dkt. No. 164-2 ("Vogel Decl.") ¶ 2. Following Defendants' initial responses and production on April 18, 2024, ML emailed Defendants to set up a meet and confer. Vogel Decl. ¶¶ 4-5, *see also* Vogel Decl., Ex. 2. Due to scheduling conflicts from both ML and Defendants, the parties eventually met on June 10, 2024. Vogel Decl. ¶¶ 6-9; *see also* Vogel Decl., Ex. 6. The parties

collaborated to draft a protective order in June and July. Vogel Decl. ¶¶ 11-21. Efforts to negotiate disagreements on the protective order's language led to a delay into October 2024. *Id.* ¶¶ 22-26.

The Court entered the protective order on October 15, 2024. *Id.* ¶ 26. Defendants had informed ML that Defendants would make supplemental disclosures "after the court's entry of a protective order." *Id.* ¶ 15; *see also* Vogel Decl., Ex. 9, at 2. Defendants did make some disclosures on November 21, 2024, following ML's requests for supplemental disclosure on November 20, 2025. Vogel Decl. ¶¶ 27-28; *see also* Vogel Decl., Exs. 19-20. At this time, ML attempted to seek a stipulation to extend deadlines; Defendants did not agree. Vogel Decl. ¶ 28. Defendants made additional disclosures on December 9, 2024, and the parties met and conferred again that month. *Id.* ¶ 29.

ML's efforts continued into 2025. Following what ML characterizes as Defendants' non-response, ML commenced the process of scheduling a January 2025 scheduling conference. *Id.* ¶ 30. The Court ordered the parties to meet and confer immediately after the hearing to determine whether defense counsel had appropriately engaged in discovery as the Court had directed. *Id.* But Defendants did not provide availability until January 31, which was after ML's January 30 deadline to file a motion to compel. *Id.* To that end, ML filed a motion to compel discovery. *Id.*

The parties engaged in 30(b)(6) depositions in February 2025. *Id.* ¶ 31. On March 5, 2025, ML sent Defendants an impasse letter describing the ongoing discovery efforts and seeking an informal discovery conference with Judge Bristow. *Id.* ¶ 31; *see also* Vogel Decl., Ex. 21. ML followed up on March 19, 2025. Vogel Decl. ¶ 33. Judge Bristow held the informal discovery conference on April 7, 2025. *Id.* ¶ 34. On April 21, 2025, the parties met to attempt to resolve the outstanding disputes regarding Defendants' document production. *Id.* ¶ 35. Through the remainder of April and May, ML appears to have reached out repeatedly in hopes of obtaining the discovery it believed was outstanding. *See id.* ¶¶ 35-54. Throughout May and June, ML also appears to have diligently engaged in efforts to depose several of Defendants' employees. *Id.* ¶¶ 58-61. Upon Defendants' notice that several of the witnesses scheduled for deposition no longer worked with Defendants, *id.* ¶ 61, ML re-noticed its subpoenas for third-party depositions. *Id.* ¶ 66. Defendants informed ML that they would be unable to hold the scheduled depositions due to prior commitments

1  in June. *Id.* ¶ 69. ML responded by re-noticing the third-party depositions in July. *Id.* ¶ 74. On July

2  30, 2025, the cutoff for fact discovery passed. Dkt. No. 99.

3  On September 5, the Court granted in part Plaintiff's Motion to Compel. *See generally* MTC

4  Order. It ordered Defendants to produce documents and supplement discovery for Requests for

5  Production 6, 7, 10, 12, 13, 31-33, and 35, as well as Interrogatories No. 1-3, 8-10, 12, 14-16, and

6  19-22. *See* MTC Order at 51. On September 12, the parties met and conferred regarding ML's intent

7  to file the instant Motion, pursuant to Local Rule 7-3. Vogel Decl. ¶ 85. Defendants indicated that

8  they would oppose the Motion. *Id.* Seven days later, as required by Local Rule 7-3 and this Court's

9  Civil Standing Order, ML filed the instant Motion. *See generally* Motion.

10  Based on the events as described above, it appears to this Court that ML has shown it has met

11  its duty of diligence. It has been communicating regularly with Defendants via email, several meet-

12  and-confers, informal discovery conferences, the Motion to Compel, and the instant Motion. It is

13  satisfied, based on the parties' explanation of the timeline, that ML has made diligent efforts to seek

14  the discovery to which it believes to be entitled.

15  In Opposition, Defendants argue that ML has not been diligent. It makes two primary

16  arguments in support of that conclusion. *See* Opp. at 6-7. This Court addresses each in turn below.

17  First, Defendants reason that this Court should consider Plaintiff's motion in "its full

18  procedural context"—namely, that this is ML's third request to modify the Civil Trial Order, and

19  that this Court has already found that ML was not diligent in its order denying ML's first motion to

20  modify the Civil Trial Order. *See* Dkt. No. 73 at 3. Though this Court did not find in January that

21  sufficient good cause had been shown for a modification of the CTO, this has little bearing on

22  whether ML has *now* shown sufficient good cause for the modification. Of course, ML now stands in

23  a different position; it has detailed its good-faith efforts to engage in discovery, which this Court has

24  already detailed above. Additionally, the instant Motion follows an Order in which Judge Bristow

25  found that ML was entitled to additional discovery—an Order that ML did not have until months

26  after the fact discovery cutoff passed. Defendants' argument does little to acknowledge the different

27  posture of this case at this time, and this Court's January 2025 findings do not control its finding of

28  appropriate diligence and good cause today.

Second, Defendants note that ML's Motion is untimely; they argue that, because ML has filed this motion after the close of fact discovery, the timing of the instant Motion weighs against a finding of diligence. But again, Defendants' argument fails to account for the clear context of the instant Motion—a September 2025 ruling establishing that ML is entitled to discovery productions and disclosures that it has not yet received. *See generally* MTC Order. There, Judge Bristow determined that "Plaintiff ha[d] prevailed on the majority of the disputes raised in the Motion." *Id.* at 51. Given that those disputes were necessarily unresolved until the MTC Order's issuance in September—months after fact discovery closed—Defendants' suggestion that ML was not sufficiently diligent in seeking the discovery to which it is entitled per the MTC Order is not persuasive.

Third, Defendants argue that—to the extent that ML *has* been active in pursuing discovery—those actions are better characterized as an inappropriate attempt to broaden the case. Opp. at 7-8. It notes that ML's efforts "have been misdirected toward harassing Defendants over their warehouse operations—issues irrelevant to online advertising—and even now it attempts to drag in a nonparty warehouse, Union Vision, on the flimsiest of bases." *Id.* But in considering the MTC Order, the Court already addressed whether the discovery sought was "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also* MTC Order at 6-9 (discussing the applicable law, including the required showing that the discovery sought is relevant to the case). To the extent that Defendants make arguments regarding the impropriety of the discovery that ML has requested and that the MTC Order has confirmed that ML is entitled to receive, this Court declines to treat the instant Motion as one for reconsideration of the MTC Order.

For these reasons, this Court finds that ML has been sufficiently diligent, and that its request for modification of the operative scheduling order proceeds to the merits.

### B.  ML has shown good cause.

District courts have "broad discretion [to] supervis[e] the pretrial phase of litigation." *Johnson*, 975 F.2d at 607. This Court next turns to the remaining factors that the Ninth Circuit

1  elaborated in *City of Pomona*. Applying that framework, for the reasons below, it finds good cause

2  exists here to modify the scheduling order.

3      The first factor—the imminence of trial—does not weigh strongly in either direction. It is

4  true that the parties are approaching the scheduled Final Pretrial Conference, which is presently

5  scheduled for January 14, 2026. Dkt. No. 99. It bears mention, however, that the instant Motion was

6  filed over four months before the scheduled Final Pretrial Conference. *See generally* Motion. This

7  Court scheduled this matter for hearing on December 4 based on its own calendar and availability.

8  To that end, though trial is approaching, this Court does not weigh this factor to ML's detriment,

9  particularly as it filed the instant Motion promptly after receiving the MTC Order. Moreover, the

10  imminence of trial as a factor is particularly salient following the final pretrial conference, after

11  which time scheduling orders may be modified "only to prevent manifest injustice." *Johnson*, 975

12  F.2d at 608 (quoting Fed. R. Civ. P. 16(e)). As the final pretrial conference has not yet occurred, this

13  Court does not find that this factor weighs heavily on its good-cause analysis.

14      The second factor—whether the request is opposed—weighs against amendment. Defendants

15  have opposed the request. *See generally* Opp.

16      The third factor—whether the nonmoving party would suffer prejudice from the

17  amendment—does not weigh against amendment. In opposition, Defendants argue that an extension

18  would "require Defendants to re-litigate deposssitions, divert resources away from trial preparation,

19  and incur additional costs." Opp. at 11. But an extension of the schedule would merely permit ML to

20  seek what the MTC Order establishes that ML is entitled to seek—this Court expects that the scope

21  of the additional discovery period would be appropriately limited to ML's efforts to obtain the

22  discovery discussed in the MTC Order.[2] Moreover, while true that extending the pretrial deadlines

23  may lead to more discovery, pretrial, and motion activity, these possibilities do not appear to this

24  _____

25  [2] At the hearing, counsel for ML represented that ML does not intend to seek additional time for expert
discovery or to serve additional parties in seeking discovery. Counsel for Defendants indicate that they would

26  be prejudiced if ML had the opportunity to disclose an additional expert. But this Court does not find that the
work that would ensue if true—as this Court understands it, between two and three additional depositions—

27  rises to the level of prejudice. Should Defendants need more time in light of this Court's Order, they may
request it. Given the parties' representations in the papers and the hearing, and this Court's interest in efficient

28  resolution of this matter, this Court will be disinclined to provide further continuances to ML unless strong
cause exists.

Court to rise to the level of prejudice; they are a common possibility in all cases where deadlines for discovery, pretrial, and motion activity are extended. Nor do Defendants raise more specific allegations about prejudice that it may suffer, beyond their general statements about the possibility of further expense and delay. And to the extent that Defendants note the possibility of prejudice that would arise from diverting resources away from trial preparation, this Court does not see this as sufficient reason to find prejudice; after all, the Motion would not only reopen discovery, but would also extend all pretrial and trial deadlines, thereby diminishing the urgency for trial preparation at this time as the parties engage in continued discovery efforts.

The fourth factor—the foreseeability of the need of additional discovery in light of the time that this Court initially allotted to discovery—weighs in favor of amendment. Given that the parties disputed the extent to which ML was entitled to the discovery it sought in the MTC—which was resolved after the fact discovery period ended—it appears reasonable to this Court that the parties could not have foreseen ML's now-evident discovery needs, following the MTC Order.

And the fifth factor—the likelihood that the discovery will lead to relevant evidence—weighs strongly in favor of amendment. ML has a clear case that additional discovery will lead to relevant evidence; this is, after all, what the MTC Order thoroughly considered when it granted in part ML's requests to compel additional production and discovery responses. To that end, it appears to this Court that ML is entitled to at least some discovery that it has not yet received. In Opposition, Defendants argue that "the supposed need for more discovery was entirely foreseeable," and that the discovery sought will not yield probative evidence. Opp. at 12-13. These arguments appear to undercut each other; if ML should have known earlier that it would need the discovery it now seeks, it stands to reason that that discovery would yield probative evidence. Moreover, Defendants do not meaningfully address the MTC Order's granting of several of ML's requests to compel additional discovery responses from Defendants—discovery that ML has now shown it is entitled to, which it is entitled to reasonable time to seek.

In sum, performing the good cause analysis under the *City of Pomona* factors—with an emphasis on the strong possibility that additional discovery will allow ML to access currently

undisclosed evidence to which it is entitled—this Court finds that good cause exists to modify the scheduling order.

**IV.** **Conclusion**

For the foregoing reasons, the Court hereby ORDERS that the Motion is GRANTED. Within seven days of this Order, the parties are ORDERED to meet and confer and jointly file a stipulation proposing new pretrial and trial dates in accordance with this Order.


IT IS SO ORDERED.


Dated: January 9, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge